Move to the second case which is 20-13301 Johnson v. State of Florida We have Mr. Rosner here for Mr. Johnson and Mr. Esrae here for the State. Mr. Rosner, whenever you get settled, no hurry, but whenever you get settled, you can proceed. Good morning, Your Honors, and may it please the Court, my name is Jeremy Rosner. I am on behalf of Genevieve Jablov and Batista and I represent Petitioner Appellant James Russell Johnson. While we contend in our briefs that this case should be dismissed and that the indictment against Mr. Johnson should be dismissed, we do recognize that in light of the scant record on appeal, in light of holdings like United States v. Dennard, Finfrock v. Crist, and Ferguson v. Culliver, that the more judicious and prudent route would be to remand, to allow the District Court to conduct an evidentiary hearing, order a response from the State, and have the full benefit of a full State Court record. For purposes of this oral argument, I start with the second and fourth Barker factors, and if time permits, move on. Can I ask you to build a question right at the outset based on what you said? Am I correct in understanding that the relief you are seeking here is to have the Federal Court intervene and dismiss the case in the State Court on the grounds of a Sixth Amendment violation? Correct Your Honor, whether that be here on appeal or at the District Court level. And if I may, just to follow up on Judge Marcus' question, before you get to Barker, can we say that we might have an exhaustion problem here? Sure, Your Honor. My concern is that we, I say we, the Royal we, our predecessor court was quite clear in saying that making what we would call the Florida rule claim doesn't serve to exhaust a Sixth Amendment speedy trial claim. And I just don't see in the record where you ever really put before the State Court your Sixth Amendment speedy trial claim. Lots of talk about the Florida rule, but very little about the Sixth Amendment. Sure, Your Honor. Well, according to this court and the Supreme Court, it only takes one reference, whether that be, according to Baldwin v. Reese, whether you say the word Federal, a Federal source of law, or a Federal case. In August of 2019, Mr. Johnson moved as a petition to proceed as an indigent pro se litigant. Now, while that's not a motion to dismiss, according to Prince v. Alabama, it need not matter what form the request for a speedy trial come in so long as the court is alerted to his Sixth Amendment rights. Within that petition to proceed as an indigent pro se litigant, he did raise his Sixth Amendment claim. He stated the Rule 3.191 Florida Procedural Rules violations. We contend that in conjunction with that, raising of that initial statement of the Sixth Amendment along with the Florida Procedural Rules, the trial court should have known as a pro se litigant and viewing his pleadings in a very liberal way that he was raising a Sixth Amendment claim in addition to his Florida Procedural claim. Moreover than that, Your Honor, in the second notice of expiration to strike the second expiration of speedy trial, sorry, that's a mouthful. The courts, while they cited the Florida Administrative Rules for part of their reasoning, they also cited the District Court's report and recommendation and the District Court's order. That tells you that they relied in part on the District Court's denial of Mr. Johnson's Sixth Amendment claims. Indeed, in the report and recommendation, the magistrate judge cited Crockett v. State and Braden, both Sixth Amendment cases, both speedy trial cases, and none to do with Florida Procedural Rules. That should have alerted the trial court at the trial level that he was, that he did exhaust his claims. Further, at the appellate level, in his writ of prohibition, it is clear as day that he did cite his Sixth Amendment claims. While that writ of prohibition may have now exhausted after his petition was decided, according to authorities like Sharp v. Buchanan, Weathers v. Shields, Buffalo v. Reno, an exhaustion during appeal route, especially in this appeal as a pro se litigant that was Mr. Johnson, would be the more thoughtful way as opposed to relying on cases like Salang or like Deming or Salama. Now moving, getting back to the second and fourth Barker factors, the second factor is... Before you get to the Barker factors, beyond the question of exhaustion, which we've just raised, you have a separate hurdle that you have to get over. And you've got to show us why this isn't a classic case for abstention under Younger v. Harris. In that case, the Supreme Court said, and by now it's really Hornbook law, that a federal court does not have the power, an inferior federal court, a district court or a circuit court, does not have the power to intervene in the middle of a state court proceeding, and to have a criminal proceeding and stop it. Younger abstention is required, one, where there are state proceedings that are judicial in nature and they're pending. There's no dispute about that, is there? Regarding the applicability of Younger abstention, Your Honor? About whether there was a state proceeding, judicial in nature, that was pending. No, that's correct, Your Honor. We would contest the third Younger abstention... You would accept the second one, that there are important state interests in being able to perfect their own laws and remedies and adjudicate their laws in the state court. So your argument is, there is no adequate alternative state form where the constitutional  Yes, Your Honor. That's curious to me, because you certainly were in a position where you could raise it in a trial court, in the intermediate appellate court, and in a certain position to the Florida Supreme Court there as well. So why were you barred or prevented from raising this constitutional question in the courts of Florida? Yes, Your Honor. Well, I perceive your question as a two-part question. First, I'll start with why Mr. Johnson didn't challenge this as a writ to the Florida Supreme Court. The Florida District Court of Appeal, the first district, denied his writ of prohibition as a per curiam denied decision. That has no applicability, and the Florida Supreme Court would be without jurisdiction to take a case that was denied as per curiam denied. It's a summary dismissal, Your Honor. There would be no way... I'm sorry, I didn't mean to cut you off. Oh, you were saying? No, just so I understand the argument, your view is the Florida Supreme Court did not have cert power to take it. Yes, Your Honor. And to answer your other question, Judge Marcus, Gibson v. Berryhill and Meredith v. Organ clearly state that concomitant with that third, younger requirement is that the state court be a timely state tribunal of competent jurisdiction. Here, we equate these cases to like McNeely v. Blanas and Jones v. Markiewicz, where both courts summarily denied the petitions for relief or frankly just ignored the petitions for relief. And this is especially important in the speedy trial context where every single month that he was consistently being deprived of his constitutional right, Your Honor. Did you raise the Sixth Amendment Barker v. Wingo claim in the intermediate appellate court? And if so, could you point me to where in the record I would find that? Sure, Your Honor. That would be page 466, 474, and 480. And what did you argue in the, I guess it was the first DCA. Tell me specifically the argument that was made there. Did you say, in words or substance, Barker v. Wingo has been violated, the Sixth Amendment rights have been violated, this is a constitutional claim that goes beyond the Florida rule claim? Well, Your Honor. Would I find that in that? Would I find that when I look at the brief? Yes, Your Honor. In his second amended writ of prohibition, he clearly states the Sixth Amendment and I believe he also states the word prejudice, which is usually the magic word when raising a Sixth Amendment speedy trial claim. Now, getting back to the second Barker factor, which I believe is what the Certificate of Appeal truly wanted to address, is the reason for delay. Different reasons for delay are accorded different weights. There is a valid reason, a deliberate reason, and a negligent or a neutral reason. Here, and the prosecution bears the burden to prove each reason for delay. Right now, Mr. Johnson has been withheld a trial for now 30 months. Eight of those months were pre-COVID. Twenty-two of those months were due to the trial moratorium imposed by the Florida Supreme Court as a result of the COVID-19 delay. We contend, Your Honors, that this case is synonymous with courts that have imposed other constitutional, institutional delays, like Vermont v. Breein, Hay v. Vermini, where, for example, a judge's illness caused a delay, a summer recess caused a delay, a de facto state policy caused a delay, a breakdown in the public defender system caused a delay. And there's a reason for that. It's because not only is the prosecution charged with bringing the defendant to a prompt trial, so is the state courts. And here, the state courts did not abide by that burden. It is clear as day, according to the holding of Barker v. Wingo, that the state has an affirmative constitutional obligation to bring a defendant to trial and that the state court, specifically the prosecution, has the specific undertaking to bring that as a valid reason for delay, would contravene the very purpose of a prompt trial and would cut against the grain of the Sixth Amendment speedy trial clause. To allow that would actually force defendants like Mr. Johnson to further prove and make it more difficult to prove other Barker factors, specifically and especially prejudice, which is already in and of itself a very hard factor to substantiate, as seen in the litany and plethora of cases before this court and other courts. To dub COVID-19 as a valid reason for delay would not be the appropriate course of events. I incline this court to follow the holdings of Curtainback, Henning, Exparte, Sheffield, and Cotney in calling this, calling the trial moratorium imposed by the COVID-19 delay, which is the majority of the delay caused to Mr. Johnson, we would call that a neutral reason for delay and we ask that this court remand it for further proceedings in an evidentiary hearing. Thank you. Okay, very well. Thank you so much, Mr. Rosner. Sorry for mispronouncing your name at the outset. But you have your full three minutes of rebuttal time remaining. Mr. Esrae, we'll hear from you. Good morning, Your Honors, and may it please the court. On petitioner's theory, criminal defendants in any of the 26 states that pause jury trials due to without any adjudication of guilt. That result is inconsistent with our federalism and with the Sixth Amendment. This court should affirm on any of three grounds, exhaustion, younger abstention, or the merits. And let me start with exhaustion because I think there have been a lot of questions there this morning. And there are a number of theories swirling around the briefs on that issue. But at bottom, we have a very straightforward claim. As I think your question recognized, Judge Newsome, our argument here is that petitioner did not exhaust because he did not and still has not raised a Sixth Amendment claim in the state court. And I think I can get there with three relatively uncontroversial propositions. First, in the state court, petitioner only ever raised a state law rule-based 3.191 claim. Second, as you recognize, Judge Newsome, under Fifth Circuit precedent, raising a 3.191 claim does not exhaust a Sixth Amendment claim. And third, petitioner was required to exhaust his Sixth Amendment claim. Let me start with the first premise, which is that petitioner only ever raised a rule-based claim in the state courts, not a Sixth Amendment claim. And we cite all of his speedy trial filings at page 18 of our brief. And all of them either sound in the Florida rule or have no legal citation whatsoever. And I think petitioner agreed with that this morning. Instead, what he says is that the state court should have been alerted to the nature of the Sixth Amendment claim because of other documents, not the speedy trial demands or speedy trial motions, but other documents in the state court record. But I don't think he gets very far with that argument because, as this court said in McNair, quote, the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. And indeed, he's citing the Supreme Court's opinion in Baldwin for the idea that we should have looked back at his motion to proceed pro se to find a Sixth Amendment claim. But that's a very curious citation because in Baldwin, the Supreme Court was quite clear that in evaluating exhaustion, we look only to the briefs that the petitioner filed. They didn't even have to look to the underlying state court decision in Baldwin to find exhaustion. So I don't think he gets very far saying that we should comb the record in order to find a Sixth Amendment theory that's not in any of his speedy trial filings. But even if we do, none of the filings that he points to suffices to exhaust a Sixth Amendment claim. He relies quite heavily on his motion to proceed pro se, and that's at supplemental record page 404. And the only Sixth Amendment argument he makes there is he says that proceeding pro se is, quote, a Sixth Amendment issue is speedy trial issue because everyday defendant is deprived of filing material is a longer trial process. The problem with that document is that it does not allege a Sixth Amendment claim whatsoever. It makes the conditional claim that if petitioner were not permitted to proceed pro se, then there might be Sixth Amendment complications down the line. But of course, the state court granted the motion to proceed pro se. So I don't know why the state court would think that they forever need to go back to that document to underlie the speedy trial filings. And even if they did, and even if in combination with every other document that petitioner was citing this morning, I still don't think he would satisfy the test that this court articulated in Kelly for exhaustion. Because Kelly says that in order to exhaust a state court prisoner must, quote, present their claims to the state courts such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. And Judge Marcus, I think you hit the nail on the head here. Even if you think that those documents would have raised the specter of the Sixth Amendment, none of them gets close to stating the particular legal basis under Barker v. Wingo that petitioner is pressing now. And none of them has any factual adornment that would have made it possible for the state court to adjudicate a Sixth Amendment claim. And I think if there's any doubt on that score, the state court proceedings bear this out. No one in the state court thought that petitioner was raising a Sixth Amendment claim. His own counsel, and this is at record pages 47 and 49, understood his filings as raising a claim under 3.191. That's why she responded with information about the Florida rule. And the state court, in dismissing the claim, says that the claim was brought pursuant to Rule 3.191. That's at supplemental record page 461. So I think it's quite clear in this case that there just is not the specter of the Sixth Amendment claim at all going on on the state court docket. That leaves the question of whether raising the 3.191 claim itself suffices to exhaust a Sixth Amendment claim. I think I would submit that that answer was answered in Kelly when this court was quite clear that raising a somewhat similar state law claim does not suffice to exhaust a federal claim. And Judge Newsom, as you alluded to, we have binding Fifth Circuit law that says as much. That leaves petitioner with the argument that he developed in his opening brief, which is that he wasn't required to exhaust at all because of delays in the state court. But I don't think that there was any delay here that would excuse exhaustion. Petitioner went to the federal court six days after seeking dismissal under Rule 3.191. I don't think there's any world in which a six-day delay would excuse exhaustion. And we know that petitioner's motion was heard one month after he properly set it for a hearing. And again, I don't think that a one-month time period is the type of delay that would excuse exhaustion. Even under petitioner's cases like Breesal, what we're looking for is a complete dormancy on the state court record. So I think on the whole, this is a quite straightforward case to affirm on exhaustion grounds. Petitioner never raised a speedy trial Sixth Amendment claim in the state courts and still has not. Even if the court disagrees with everything I've said so far, we would also urge the court to affirm under Younger. And I think the parties have— Before you, counsel, before you get to Younger, quick question. Did the Florida Supreme Court have the cert power to take this case upon a petitioner? Sorry, excuse me, Judge Marcus. I don't think that they did because the court generally lacks jurisdiction to review pure curiam decisions from the District Courts of Appeals. That said, our theory doesn't really depend on appellate review because we don't take petitioner to ever be making a Sixth Amendment argument. I would point out that if petitioner wanted additional review, he had an avenue to do so. So the way that this generally works at the Florida Supreme Court is that they only review written decisions of the District Courts of Appeals. Recognizing that there's a procedure in the Florida rules that allow a petitioner to move for a written decision when they received a pure curiam decision. So petitioner could have done that and with a written decision in hand, he then could have turned to the Florida Supreme Court. He also could have sought—his brief talks about how important these issues are. One of the grounds that creates Florida Supreme Court jurisdiction is a certification of importance. So he could have sought that from the District Court of Appeal, too. I think the point is there were options if he wanted additional review, but I don't think that it particularly matters because I don't think the Sixth Amendment was ever an issue in the appeal anyway. And so, you know, we would ask that the court affirm on exhaustion on that front. Failing that, we would also ask that the court affirm on Younger. And I think the parties have approached the issue of Younger from a place of remarkable agreement. We all agree that federal courts cannot intercede in ongoing state criminal proceedings. We all agree that there are exceedingly narrow exceptions that rule for extraordinary circumstances like bad faith or harassment. And the only disagreement that we have in this case is whether there is such an extraordinary circumstance here. I think even that dispute is substantially narrowed by the reply and by this morning. I think petitioner is really only making two arguments for why he can avoid Younger. His first theory is that he can avoid Younger on a theory that the state courts delayed in adjudicating his claim. And his second theory that I think he develops more in the brief than he did this morning is that he thinks the state courts were categorically incapable of hearing a Sixth Amendment claim. I don't think either argument gets in there. Let me start with delay. I think the fundamental problem that petitioner has here is that there's just no appreciable delay in the state court proceedings. Again, petitioner went to federal court six days after filing a motion to dismiss under Rule 3.191. And in any event, the state court acted within a month of his properly setting a motion for hearing. And I just note that the U.S. Supreme Court in Moore v. Sims said that the fact that a party is not given a hearing at the exact time that they want one is not itself a ground for Younger. So I think the fact that petitioner would have preferred a more expeditious hearing, notwithstanding the fact that he didn't set one, is not a reason to avoid Younger. And that leaves petitioner with the argument that the state courts were categorically incapable of hearing this claim. But the trial judge found, to the contrary, that's at record page 70. I think that's quite correct because nothing in the Florida Supreme Court's rules prevented petitioners or people in petitioner's places from raising Sixth Amendment claims in the Florida courts. And so I think this is also a classic case for Younger abstention. I just note the two cases that petitioner relies on for Younger are just not Younger cases at all. McNeely v. Blanus, you can look up and down it, there's no mention of Younger. And that's because, as the Ninth Circuit explained a couple years later in Brown v. Ahern, that's a case where the state waived its Younger argument. And Jones, the Eastern District of Pennsylvania case that petitioner relies on, is not a case where the petitioner was seeking dismissal of the charges against him. And so we think that's more appropriately characterized as a Brayden claim. And as the Supreme Court said in Brayden itself, Brayden doesn't raise the same type of comedy and federalism concerns that animate Younger. So I think on either of the grounds the District Court reads Exhaustion or Younger, we would ask that this Court affirm. If there are no further questions, I'm happy to yield the balance of my time. Okay, very well. Any further questions? Okay, thank you very much. Thank you, Your Honor. And Mr. Rosner, you have your full three minutes of rebuttal. Your Honors, I want to address more the exhaustion issue. You have to place yourself in Mr. Johnson's state of mind as a pro se litigant. He demanded speedy trial several times before March of 2020, the government shutdown. None of his petitions or answers or grievances were ever being addressed. Now a month after March, now at March 2020, the government shuts down. He thinks to himself, I have no other claims for reprieve. I'm going to file a federal habeas petition in addition to filing and moving in the state court. Now that federal habeas petition was amended and finally addressed in July of 2020. You have to place yourself in Mr. Johnson's shoes and think to himself what he was capable of as a pro se litigant. Now with respect to Younger, Your Honors, Judge Marcus, I think you had issue and raised the question and issue of whether Younger even applied. And opposing counsel raised the cases of Jones and had issue with the case of McNeely. But there are other reasons that Younger shouldn't have applied here. There are other, quote, extraordinary circumstances that merited the inapplicability of Younger abstention. And the first and probably most relevant reason would be that the Florida Supreme Court's administrative orders, while not du jour or as a matter of fact are violative of the Sixth Amendment speedy trial clause, at some point, Mr. Johnson's claims are going to be pushed back and pushed back and pushed back. And not speak of Mr. Johnson, but any prisoner are going to be pushed back to the point where you wave your hands and say, is he finally going to have his trial? And this is especially important here where Mr. Johnson's defense very much hinges on whether he gave consent to Officer Willis on the day of his arrest. Now, whether that is a matter you if I can ask you, do you think the state courts are unable to protect your client's Sixth Amendment right? They are able to protect his Sixth Amendment rights, your honor, but as the Florida Supreme Court's administrative orders are being applied right now. And given that Calhoun County in the 14th Judicial Circuit is still in phase two, he does not have the adequate procedural protections of rule 3.191, which were promulgated pursuant to the protections afforded to the Sixth Amendment. The only protections he has to have a prompt and speedy trial is the Sixth Amendment. Your honors, I leave you with Justice Gorsuch's concurrent and Roman Catholic diocese in that while the Constitution can take a vacation during the pandemic, it cannot take a sabbatical. I'd like to thank the panel for their time and consideration. Let me let me just ask one other question. I was just curious about in the course of the proceedings, your client was released from custody. Right. At what point was he released from custody? That would be December of 2020, your honor. And to the extent the record reflects it, has it been brought to trial yet? No. Thanks very much. Thank you. Okay, so that case is.